UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JAKUBOWSKI,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STEPHANIE CLENDENIN, *et al.*,<br><br>　　　　Defendants. | Case No. 1:23-cv-00897-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION TO DISMISS<br><br>(ECF NO. 12)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

　　　　Plaintiff David Jakubowski is a civil detainee at Department of State Hospitals, Coalinga ("DSH-Coalinga"). He is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983 against Defendants who are employees at DSH-Coalinga.

　　　　Plaintiff initiated this action on June 14, 2023. (ECF No. 1). Plaintiff alleges that Defendants violated his Fourteenth Amendment right to have access to mental health treatment that gives him a realistic opportunity to be cured and released because they have not adequately staffed DSH-Coalinga with enough psychologists and because they are using non-licensed rehabilitation therapists and behavioral specialists in treatment plans. (*Id.* at 4).[1] Plaintiff also alleges that Defendants violated his Fourteenth Amendment right to be free from punishment

---

[1] Page numbers refer to the blue CM/ECF numbers in the top right corner of the document.

by making Plaintiff's conditions of confinement more restrictive than those of inmates in county jails and prisons. (*Id.* at 24 ¶ 68, 69). The Court screened Plaintiff's complaint and found both of his claims cognizable. (ECF No. 7 at 8).

Before the Court is Defendants' Motion to Dismiss (ECF No. 12), which Plaintiff opposed (ECF No. 13). Defendants filed a Reply. (ECF No. 14). For the reasons stated below, the Court will recommend that Defendants' Motion to Dismiss (ECF No. 12) be DENIED.

I. BACKGROUND

A. Allegations in Plaintiff's Complaint

Plaintiff filed a complaint commencing this action on June 14, 2023. (ECF No. 1). Plaintiff alleges that he is "an adjudicated Sexually Violent Predator (SVP)" committed to DSH-Coalinga since October 13, 2022. (ECF No. 1 at 10 ¶ 8.) He names DSH-Coalinga employees Stephanie Clendenin, Director; Brandon Price, Executive Director; Dr. Cory Fulton, Chief Psychologist; Dr. Scott van de Putte, Senior Psychologist; and Frank Maul, Chief of Rehab Therapy as Defendants in this action. (*Id.* at 9–10 ¶¶ 3–6). He sues Defendants in their official capacities. (*Id.*)

Plaintiff alleges that he is "civilly detained for treatment and rehabilitation." (*Id.* at 10 ¶ 7). The appropriate treatment is determined during the initial assessment upon admission. (*Id.* at 11 ¶ 11). The treatment is overseen by the treatment plan team, whose purpose is "to facilitate the Plaintiffs recovery and reintegration into the community." (*Id.* at 12 ¶ 17). DSH-Coalinga offers sex offender treatment program (SOTP), which involves Plaintiff presenting to facilitators and peers in SOTP groups. (*Id.* at 12 ¶ 19; 13 ¶ 22). The SOTP group facilitator is supposed to be "a clinician trained to do psychotherapy, or being supervised by someone licensed to do psychotherapy. . . . Practically speaking, this involves primarily psychologists and social workers." (*Id.* at 14–15 ¶¶ 28–29).

Plaintiff then alleges that Defendants violated his Fourteenth Amendment right to due process when they collectively, via acts and omissions, failed to properly staff DSH-Coalinga with enough psychologists to provide psychotherapy services, and failed to reduce the risk of violence and harm resulting from said practice. (*Id.* at 24 ¶ 68; *see also* id. at 4). Plaintiff also

2

alleges that his Fourteenth Amendment rights were violated because Defendants properly staffed the treatment groups for "penal code offender," or criminal patients that had mental health disorders, but failed to do so for him. (*Id.* at 24 ¶¶ 68–69.) The criminal offender treatment groups, Plaintiff claims, were "consistent and uninterrupted." (*Id.* at 24 ¶ 69). He also contends that because of the different treatment, he has been subjected to punishment because his condition of confinement is more restrictive than that of inmates in county jails and prisons. (*Id.* at 24 ¶ 68; *see also id.* at 4).

Plaintiff seeks injunctive relief requiring those treating him to have specific levels of education and state licenses. (ECF No. 1 at 26 ¶¶ 2–7; *see also id.* at 7). He also asks that Defendants properly staff DSH-Coalinga with enough therapists, refrain from placing non-licensed individuals and behavioral specialists in sex offender treatment groups, and ensure that Plaintiff is offered SOTP treatment enrollment or re-enrollment on a monthly basis, even if he un-enrolls from the treatment. (*Id.* at 26 ¶ 4; 12 ¶ 17).

### B. Screening Order

The Court screened Plaintiff's Complaint on March 14, 2023 (ECF No. 7) and issued an order finding that "Plaintiff's Fourteenth Amendment claims for violations of the right to curative treatment and to be free from punishment against Defendants Clendenin, Price, Fulton, Van De Putte, and Maul should proceed past screening." (*Id.* at 8).

## II. DEFENDANTS' MOTION TO DISMISS

### A. Defendants' Motion to Dismiss

On June 10, 2024, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 12). Defendants provide background on SVPA and SOTP (*id.* at 5–7), then argue that Plaintiff's complaint fails to state a claim because Plaintiff "has not alleged facts supporting a finding of deliberate indifference to a serious medical need." (*Id.* at 3, 7–9). Next, Defendants argue that the type of medical care that patients committed to DSH under non-SVP statutes receive is irrelevant. (*Id.* at 9–10). Finally, Defendants argue that the Court "should defer to the Department's discretion when implementing and administering the SOTP." (*Id.* at 3, 10–12).

Defendants ask that the Court grant their motion to dismiss without leave to amend and dismiss the complaint. (*Id.* at 12).

### B. Plaintiff's Opposition to Motion to Dismiss

Plaintiff opposes Defendants' motion to dismiss (ECF No. 13), arguing that his claims under the Fourteenth Amendment meet the legal threshold.

Plaintiff argues that the proper standard to apply to Plaintiff's Fourteenth Amendment claim for violation of the right to curative treatment is based on *Youngberg v. Romeo*, 457 U.S. 307 (1982) and *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980). He argues he alleged sufficient facts under what has been referred to as the "*Youngberg* professional judgment standard," which provides that in the involuntary civil commitment context a constitutional deprivation occurs when the provider's conduct "substantially departs from generally accepted standards of care" that is, a conduct that departs from how a professional would treat a patient under the same circumstances. (*Id.*)

Plaintiff also argues that comparison of the treatment he is receiving as a civil detainee to that of the treatment received by convicted inmates is necessary under *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) for his Fourteenth Amendment claim to be free from punishment.

Plaintiff asks the Court to deny Defendants' motion or allow leave to amend. (*Id.* at 8).

### C. Defendants' Reply

In their Reply (ECF No. 14), Defendants assert that none of Plaintiff's allegations related to DSH-Coalinga staffing practices "establish a medical need, much less a serious one, as required for an inadequate medical care cause of action." (ECF No. 14 at 2) (citing *Estelle v. Gamble* (429 U.S. 97, 106 (1976)).

Defendants emphasize that the SVPA allows DSH broad discretion in designing treatment programs and argue that the SVPA detainees and Offenders with Mental Health Disorders (OMD) cannot be compared because unlike with the program for OMDs, "Defendants have discretion in designing and implementing the SOTP . . . program." (ECF No. 13 at 5).

## III. LEGAL STANDARDS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974).

## IV. ANALYSIS

### A. Right to Access to Adequate Mental Health Treatment

#### 1. Parties' arguments

Again, in their motion to dismiss, Defendants argue that a claim for inadequate medical care requires showing "deliberate indifference" to a serious medical need. (ECF No. 12 at 7) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Defendants contend that Plaintiff failed to allege this claim for four reasons. First, Plaintiff failed to allege deliberate indifference because he "does not allege facts to support any intentional decisions made by any of the individual defendants with respect to [Plaintiff's] specific medical care." (*Id.* at 8). Second, Plaintiff failed to allege that Defendants put Plaintiff "at substantial risk of any medical harm, thereby causing him medical injuries." Further, "even if deliberate indifference is shown," Defendants argue, Plaintiff "must demonstrate harm caused by the indifference to support an Eighth Amendment

5

1 claim." (*Id.*) Third, the complaint fails to identify any measures that could have abated
2 Plaintiff's medical injuries. (*Id.*) And four, it fails to allege any medical injuries. (*Id.*)

3 In his response, Plaintiff asserts that Defendants' motion is based on the incorrect legal
4 standard. Instead, under *Youngberg v. Romeo*, 457 U.S. 307 (1982) and *Ohlinger v. Watson*,
5 652 F.2d 775, 778 (9th Cir. 1980), civilly committed individuals, like Plaintiff, are entitled to
6 mental health treatment that provides a realistic pathway towards rehabilitation and a safe
7 release into the community. (ECF No. 13 at 3). Plaintiff asserts that under what has been
8 referred to as the "*Youngberg* professional judgment standard," in the involuntary civil
9 commitment context, a constitutional deprivation occurs when the provider's conduct
10 "substantially departs from generally accepted standards of care" that is, conduct that departs
11 from how a professional would treat a patient under the same circumstances. (*Id.*)

12 Plaintiff then points to the allegations in his complaint that allege that Defendants have
13 not staffed SOTP programs with appropriately licensed psychologists, have reduced treatment
14 hours, and have used untrained individuals to deliver therapy. (ECF No. 13 at 3–4). These
15 allegations, Plaintiff contends, are sufficient to state a claim that the treatment he is receiving
16 falls below the *Youngberg* standard of generally accepted standards of care and therefore, is
17 unconstitutional. (*Id.* at 4–5).

18 Next, Plaintiff cites several cases involving SVP detainees that have found that
19 defendants in those cases failed to provide "constitutionally adequate" treatment because it "fell
20 below professional standards for the treatment of sexual offenders." (*Id.* at 5) (citing *Sharp v.*
21 *Weston*, 233 F.3d 1166 (9th Cir. 2000); *Howe v. Godinez*, 558 F. Supp. 3d 664 (7th Cir. 2021)).
22 Plaintiff then notes, "The statutory framework of the SVPA also requires that sex offender
23 treatment to be based on current institutional standards for the treatment of sex offenders." (*Id.*
24 at 6) (citing Welf & Inst. Code,§ 6606 (c): "The programming provided by the State
25 Department of State Hospitals in facilities shall be consistent with the current institutional
26 standards for the treatment of sex offenders, and shall be based on a structured treatment
27 protocol developed by the State Department of State Hospitals.").

28

In their Reply (ECF No. 14), Defendants assert that none of Plaintiff's allegations related to DSH-Coalinga staffing practices "establish a medical need, much less a serious one, as required for an inadequate medical care cause of action." (ECF No. 14 at 2) (citing *Estelle v. Gamble* (429 U.S. 97, 106 (1976)).

### 2. Analysis

The Court agrees with Plaintiff that Defendants' motion to dismiss is premised on an incorrect legal standard. Defendants' motion argues that Plaintiff has failed to adequately plead the elements of an Eighth Amendment claim for deliberate indifference to serious medical needs, which applies to sentences prisoners. But that is not the legal standard that applies to Plaintiff's claims, as a civilly committed detainee.

It is well settled that, in the involuntary civil commitment context, the "*Youngberg* professional judgment standard" governs Fourteenth Amendment due process claims. *Youngberg v. Romeo*, 457 U.S. 307, 321–23 (1982) (creating a standard whereby whether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverges from that of a reasonable professional). In its decision in *Ammons v. Washington Dep't of Soc. & Health Servs.*, the Ninth Circuit has described the *Youngberg* case and the standard articulated in its holding as follows:

> In *Youngberg v. Romeo*, 457 U.S. 307, 310, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court was confronted with an involuntarily committed mental patient in a state hospital who alleged that, while at the hospital, he had been injured on numerous occasions "by his own violence and by the reactions of other residents to him." The patient, Romeo, sued three hospital administrators for failing to institute appropriate procedures to prevent the injuries they "knew, or should have known" Romeo was receiving, thereby violating Romeo's rights under the Fourteenth Amendment. *Id.* Noting that "the right to personal security constitutes an 'historic liberty interest' protected substantively by the Due Process Clause," the Court held that "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all— in unsafe conditions." *Id.* at 315–16, 102 S.Ct. 2452 (citations omitted).

> According to *Youngberg*, the Constitution requires that hospital officials, in order to protect a patient's right to safe conditions, exercise professional judgment. *Id.* at 321–22, 102 S.Ct. 2452. The Court explained that liability may be imposed for failure to provide safe conditions "when the decision made by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. 2452. *Youngberg*, then, created a standard whereby whether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverges from that of a reasonable professional. We refer to this as the "*Youngberg* professional judgment standard." In distinguishing this standard from the "deliberate indifference" standard used in Eighth Amendment cruel and unusual punishment cases, the *Youngberg* Court noted that "[p]ersons who have been involuntarily committed are entitled to *more considerate treatment and conditions of confinement* than criminals whose conditions of confinement are designed to punish." *Id.* at 321–22, 102 S.Ct. 2452 (emphasis added). The Court approvingly cited the *Youngberg* professional judgment standard in *County of Sacramento v. Lewis*, 523 U.S. 833, 852 n. 12, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), noting that "[t]he combination of a patient's involuntary commitment and his total dependence on his custodians obliges the government to take thought and make reasonable provision for the patient's welfare."
>
> Relying upon *Youngberg*, the Ninth Circuit has repeatedly recognized the Fourteenth Amendment right of involuntarily committed patients to safe confinement conditions.

*Ammons*, 648 F.3d 1020, 1027–28 (9th Cir. 2011) (footnotes omitted) (applying *Youngberg* to hold that hospital official's decision violates the Fourteenth Amendment if it constitutes a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment").

The Ninth Circuit and the district courts in this Circuit have also applied the *Youngberg* standard in cases brought by SVPA detainees, like Plaintiff. *See, e.g.*, *Jones*, 393 F.3d at 932 (citing *Youngberg* to find that because plaintiff "is detained under civil—rather than criminal—process, an SVPA detainee is entitled to 'more considerate treatment' than his criminally

8

detained counterparts."); *Bodnar v. Clendenin*, No. 2:22-CV-1533 AC P, 2023 WL 3077653, at *3 (E.D. Cal. Apr. 25, 2023) (applying *Youngberg* standard in holding that SVPA detainee's claim based on violation of the right to restorative treatment is cognizable and can proceed past screening); *Kindred v. Dike*, No. 1:19-CV-00955 AWI JLT PC, 2021 WL 3847609, at *3–4 (E.D. Cal. Aug. 27, 2021), *report and recommendation adopted*, 2021 WL 4480494 (E.D. Cal. Sept. 30, 2021) (applying *Youngberg* professional standard to a due process claim for inadequate medical care brought by SVPA detainee at Coalinga); *Allen v. Kramer*, No. 1:15-CV-01609 DAD JDP, 2019 WL 932029, at *12 (E.D. Cal. Feb. 26, 2019), *report and recommendation adopted*, 2019 WL 1370358 (E.D. Cal. Mar. 26, 2019) (holding that "the deliberate indifference standard does not apply [to SVPA detainee]" and that "*Youngberg* standard governs a civil detainee's conditions-of-confinement claim").

Indeed, none of the cases Defendants rely upon in their motion to dismiss involve civilly committed detainees—let alone those held under the SVPA. Instead, each case concerns either convicted prisoners or pretrial detainees: *Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002) (action by a class of prisoners at women's state prison); *Gordon v. Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018) (pre-trial detainee); *Estelle v. Gamble*, 429 U.S. 97 (1976) (plaintiff was a convicted prisoner); *Farmer v. Brennan*, 511 U.S. 825 (1994) (same); *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) (same); *Sanchez v. Vild,* 891 F.2d 240 (9th Cir. 1989) (same); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404 (9th Cir. 1985) (same); *Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989) (same). Because none of these authorities address the rights of civil detainees, they have no bearing on Plaintiff's claims.

Accordingly, the Court recommends denying Defendants' motion to dismiss Plaintiff's claim the Defendants violated his Fourteenth Amendment right to have access to mental health treatment that gives him a realistic opportunity to be cured and released.[2]

---

[2] Defendants' argument under the deliberate indifference standard is also not supported. For example, Defendants' motion to dismiss argues that Plaintiff has not "establish[ed] a medical need, much less a serious one" (ECF No. 14 at 2, citing *Estelle*, 429 U.S. at 106). However, Plaintiff's civil commitment is based on a diagnosed mental disorder requiring psychiatric treatment. Indeed, the SVPA expressly conditions confinement on the presence of such a disorder. Cal. Wel. & Inst. § 6600(a)(1); *Hubbart v. Superior Ct.*, 19 Cal. 4th 1138, 1157 (1999) ("[A] person cannot be adjudged an SVP unless

## B. Right to Be Free from Punishment as a Civil Detainee

### 1. Parties' arguments

The Court now turns to Defendants' motion to dismiss Plaintiff's claim that Defendants violated his Fourteenth Amendment right to be free from punishment by making Plaintiff's conditions of confinement more restrictive than those of inmates in county jails and prisons.

Defendants acknowledge that Plaintiff's claim based on violation of his right to be free from punishment as a civil detainee is premised on disparate treatment compared to criminal detainees. (ECF No. 12 at 9). Defendants also acknowledge that the Ninth Circuit has held that because the purpose of confinement of a civil detainee "is not punitive, the state must also provide the civilly-committed with 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" (*Id.*) (quoting *Sharp*, 233 F.3d at 1172 and *Youngberg*, 457 U.S. at 233). But Defendants ask that Plaintiff's claim nevertheless be dismissed because differences in staffing or treatment for other categories of detainees do not establish a Fourteenth Amendment violation because courts "have found that, particularly with respect to the third element of deliberate indifference, the test for finding that the defendant failed to abate the risk will necessarily 'turn [ ] on the facts and circumstances of each particular case.'" (*Id.*) (quoting *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)).

---

he 'currently' suffers from a diagnosed mental disorder . . . . ") (citing § 6600(a)); *see also id.* at 1166 ("The Act is based on the premise that SVP's suffer from clinically diagnosable mental disorders which require psychiatric care and treatment . . ."). By detaining Plaintiff under the SVPA, the State has already conceded that he has a serious medical need requiring psychiatric treatment. *Hubbart*, 19 Cal. 4th at 1139.

Similarly, Defendants' argument that Plaintiff has not shown harm or injury from the failure to obtain treatment (ECF No. 12 at 8) disregards the fact that Plaintiff cannot be released from civil commitment until he has been successfully treated. "The SVPA is also designed to ensure that the committed person does not 'remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.'" *Hubbart*, 19 Cal. 4th at 1177 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). If an SVPA detainee is adjudged to be "safe to be at large," immediate release is statutorily required. *Id.* The denial of treatment prolongs Plaintiff's involuntary confinement, which itself constitutes an injury.

Defendants also argue that comparison of treatment of SVPA detainees to treatment of Offenders with Mental Health Disorders (OMDs) and offenders housed in "unit 21" is inappropriate because:

> OMDs are civilly committed to DSH only after meeting specific criteria as outlined in California Penal Code section 2962, and have a statutory right to treatment once said criteria has been met. Similarly, offenders housed in unit 21 are civilly committed because they've been evaluated and determined to benefit from care and treatment at a state hospital, thereby triggering a statutory right to temporary treatment at DSH pursuant to California Penal Code section 2684. Each of these types of commitments has a specific diagnosed medical need, and therefore a right to treatment exists.

(ECF No. 12 at 10).

In response, Plaintiff contends that comparison of the treatment he is receiving a civil detainee to that of the treatment received by convicted inmates is necessary for his Fourteenth Amendment claim to be free from punishment under *Jones v. Blanas*. Plaintiff asserts that in *Jonas*, the Ninth Circuit has held that if the detainee is subjected to conditions identical to, similar to, or more restrictive than those applied to individuals detained under criminal codes, than the detainee is presumed to being punished. (*Id.* at 7). Therefore, "Plaintiff has pled facts in his complaint" that show that staffing shortages and treatment reductions are unconstitutional because they deprive him of the same opportunities afforded to other detainees, such as those in the CDCR system. (*Id.* at 7–8).

In their Reply, Defendants cite *Hubbart* and emphasize that the SVPA allows DSH broad discretion in designing treatment programs, and Plaintiff cannot demand a specific treatment approach or staffing model. (ECF No. 14 at 3). Defendants argue that the SVPA detainees and Offenders with Mental Health Disorders (OMD) cannot be compared because unlike with the program for OMDs, "Defendants have discretion in designing and implementing the SOTP . . . program." (ECF No. 13 at 5). Defendants again insist that the adequacy of treatment must be evaluated based on the individual needs of SVPs, not by comparing them to other populations.

11

### 2. Analysis

The Court finds Defendants' argument does not warrant dismissing Plaintiff's Fourteenth Amendment claim to be free from punishment. Once again, Defendants' position is based on an erroneous legal standard. Defendants argue that Plaintiff has not met "the third element of deliberate indifference" (ECF No. 13 at 9), but as previously discussed at length, deliberate indifference under the Eighth Amendment is not the applicable standard. Instead, the substantive due process standard applies here:

> The case of the individual confined awaiting civil commitment proceedings implicates the intersection between two distinct Fourteenth Amendment imperatives. First, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321–22, 102 S.Ct. 2452. Second, when the state detains an individual on a criminal charge, that person, unlike a criminal convict, "may not be *punished* prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535, 99 S.Ct. 1861 (emphasis added); *see also Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir.2004) ("[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees."). As civil detainees retain greater liberty protections than individuals detained under criminal process, *see Youngberg*, 457 U.S. at 321–24, 102 S.Ct. 2452, and pre-adjudication detainees retain greater liberty protections than convicted ones, *see Bell*, 441 U.S. at 535–36, 99 S.Ct. 1861, it stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.

*Jones v. Blanas*, 393 F.3d 918, 931–32 (9th Cir. 2004). In light of these principles, the Ninth Circuit has held that "when a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" *Id.* at 932.

In contrast, Defendants rely on *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (ECF No. 12 at 9–10), which discussed the standard applicable to claims of pretrial detainees. As *Jones* states, however, "civil detainees retain greater liberty protections than individuals detained under criminal process." 393 F.3d at 932. *Gordon* is inapplicable here.

Under the correct legal framework articulated in *Jones*, the comparison between SVPA detainees and those held as OMDs is entirely appropriate. "[W]hen a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" *Jones*, 393 F.3d at 932. Because this standard unequivocally requires a comparative analysis, Defendants' efforts to distinguish between these groups do not justify dismissal at the pleading stage. Such arguments are more appropriately addressed at summary judgment or trial.

In addition, Defendants' attempt to distinguish between the treatment of SVPAs and OMDs (ECF No. 12 at 10) based on the fact that OMDs have a serious medical need is unsupported. (ECF No. 12 at 10) ("Each of these types of commitments has a specific diagnosed medical need, and therefore a right to treatment exists."). After all, SVPAs are civilly committed to DSH only after meeting specific criteria as outlined in § 6600 et seq. They have a specific diagnosed medical need. *Hubbart*, 19 Cal. 4th at ("[A] person cannot be adjudged an SVP unless he 'currently' suffers from a diagnosed mental disorder . . . . ") (citing § 6600(a)); (ECF No. 13 at 2). Additionally, they have a statutory right to treatment. (*Id.* at 6); *Hubbart*, 19 Cal. 4th at 1178 ("[T]he Department of Mental Health is required to develop and *provide* appropriate treatment programs under the Act." (citing §§ 6604, 6606, subds. (a) & (c)). In addition, they have a constitutional right to treatment. (ECF No. 13 at 3) (citing *Youngberg*, 457 U.S. at 322).

Finally, while DSH may enjoy "wide latitude" in developing its treatment program (ECF No. 12 at 10) (quoting *Hubbart*, 969 P.2d at 603), such discretion is not absolute. The provision of treatment during civil commitment is the primary reason why SVPA has been found constitutional. "The Act is based on the premise that SVP's suffer from clinically diagnosable mental disorders which require psychiatric care and treatment." *Hubbart*, 969 P.2d at 602). Treatment is central to the justification for the SVPA and is written into the statute:

> The facility designated by the community program director may be a state hospital, a local treatment facility, a county jail, or any other appropriate facility, so long as the facility can continue the person's program of

13

      treatment, provide adequate security, and minimize interference with the person's program of treatment.

Cal. Penal Code § 1610(b); *see also* WIC § 6604 ("the person shall be committed for an indeterminate term . . . for appropriate treatment and confinement in a secure facility"). Thus, the DSH's discretion in developing a treatment program does not take away Plaintiff's Fourteenth Amendment right to be free from punishment, which is decided in part by comparison with similarly situated criminal detainees.

      Therefore, the Court will recommend that Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim to be free from punishment also be denied.

## V. CONCLUSION AND ORDER

      Based on the foregoing, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 12) be DENIED.

      These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than 15 pages including exhibits.

      Any response to the objections shall be served and filed within thirty days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 18, 2025**      /s/ Erica P. Grosjean
                                                        UNITED STATES MAGISTRATE JUDGE